IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CURTIS LEE SLEDGE,

    Petitioner,                                   No. CIV S-09-2500 GEB CHS P

    vs.

D.K. SISTO,

    Respondent.            <u>FINDINGS AND RECOMMENDATIONS</u>

                                /

## I.  INTRODUCTION

Petitioner Sledge is a state prisoner proceeding pro se with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner is currently serving an aggregate sentence of 32 years to life following his 1981 convictions for robbery and first degree murder in the San Diego County Superior Court. In the pending petition, petitioner presents a single claim challenging the execution of his sentence, and specifically, the decision of the Board of Parole Hearings after a June 3, 2008 hearing that he was not suitable for parole. Based on a thorough review of the record and applicable law, it is recommended that the petition be denied.

## II.  BACKGROUND

On August 26, 1980, petitioner robbed victim Harris as Harris attempted to enter his parked car at the Night Light Inn in National City. Petitioner came up behind Harris, put a

1

knife to his back, and said "Get your hands up." Harris could feel the knife pressing against his back. Petitioner reached into Harris's back pocket, pulled out Harris's wallet, and ran away. Petitioner was arrested "based on a composite drawing of the perpetrator." At the time of his arrest, he was in a taxi cab. He had a knife and a cake cutter in his possession.

On September 12, 1980, petitioner spotted victim McNally, age 68, at a train depot. Petitioner watched McNally buy a train ticket and then followed him into the restroom. Petitioner robbed McNally of approximately $300 in cash and $1300 worth of traveler's checks. During the course of the robbery, petitioner stabbed McNally; McNally was transported to the hospital where he died approximately 5 hours later from cardiac arrest during surgery. A few days later, petitioner's girlfriend, whom he had been "pimping," provided police with information leading to petitioner's arrest.

Petitioner was received in prison on March 4, 1985. His minimum eligible parole date passed on December 20, 2000. On June 3, 2008, the Board of Parole Hearings ("Board") conducted a third subsequent (fourth overall) hearing to determine whether petitioner was suitable to be released on parole. A panel of the Board concluded that petitioner still posed an unreasonable risk of danger to the public, and thus that he was not suitable for parole.

Petitioner challenged the Board's denial of parole as a violation of due process in a petition for writ of habeas corpus to the San Diego County Superior Court; his claim was denied in a written decision dated October 16, 2008. The California Court of Appeal, Third District, denied relief in a brief written decision dated March 10, 2009. The California Supreme Court likewise denied petitioner's claim, but without written opinion.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

Additionally, this petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## IV.  DISCUSSION

Petitioner presents a single ground for relief: that insufficient evidence supports the Board's June 3, 2008 decision to deny parole, in violation of his right to due process of law. The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States

Constitution does not, in and of itself, create for prisoners a protected liberty interest in receipt of a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). If a state's statutory parole scheme uses mandatory language, however, it creates "a presumption that parole release will be granted," thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)). California's statutory scheme for determining parole for life-sentenced prisoners provides, generally, that parole shall be granted "unless consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code §3041. This statute gives California state prisoners whose sentences carry the possibility of parole a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

Despite existence of this liberty interest, the full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16.

Additionally, as a matter of California state law, denial of parole to state inmates must be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). California's "some evidence" requirement is a component of the liberty interest created by the state's parole system." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). The federal Due Process Clause requires that California comply with its own "some evidence" requirement.

4

*Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam).  Accordingly, the United States Court of Appeals for the Ninth Circuit has held that a reviewing court such as this one must "decide whether the California judicial decision approving the... decision rejecting parole was an "unreasonable application" of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603 F.3d at 562-63.  This analysis is framed by California's own statutes and regulations governing parole suitability determinations for its prisoners.  *See Irons*, 505 F.3d at 851.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers.  The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b).  The regulation also sets forth specific circumstances which tend to show unsuitability or suitability for parole:

> (c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner....
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable social history.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an

1         enhanced ability to function within the law upon release.

2 15 Cal. Code Regs. § 2402(c)-(d).

3         The overriding concern is public safety and the proper focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the applicable standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

        In this case, although the Board commended petitioner for various achievements including obtaining his GED in 1994, participating in self-help therapy such as AA, and obtaining a vocational certification in dry cleaning and a certificate in paralegal studies, the Board concluded that the factors demonstrating petitioner's unsuitability outweighed those tending to demonstrate his suitability. The Board's decision in this regard did not violate petitioner's right to due process because it is supported by some evidence in the record.

        Petitioner was born in 1950 in Alabama. He dropped out of high school in the twelfth grade and joined the Marine Corps in 1969. Petitioner served in the Vietnam War but received a less than honorable discharge in 1971 due to his drinking, use of drugs, and going absent without leave.

        While petitioner has no juvenile record, he amassed an extensive criminal record as an adult, mostly for drug related offenses. The Board noted that a summary of his adult convictions and 52 documented arrests filled four full pages. The presiding commissioner summarized:

> [You were] arrested for receiving stolen property but you were detained only for that, carrying a concealed weapon, and then I'm looking at marijuana charges, possession charges, possession of narcotics, more possession, selling drugs, selling fake narcotics, syringes, gambling, marijuana for sale, then you actually had an

7

>armed robbery but you were released on that one, LSD possession, false information to an officer, petty theft, more LSD, pimping and pandering, that was dismissed, more possession of controlled substance... [¶] ... [¶] ... [¶] ... [¶]  Again in '78 arrested for pimping and pandering, battery, more marijuana for sale, tampering with a vehicle, assault on a person, no disposition on that one, that was in '79, more gambling [*sic* all]

(Transcript at 20-21.)

In addition, while incarcerated, petitioner has amassed a total of nine disciplinary reports; most recently he received two in 1999 for possession of controlled medication. He also received eleven less serious "128A counseling chronos" during incarceration, most recently in 1997 for not standing for count.

The most recent psychological evaluator wrote with respect to an assessment of petitioner's dangerousness:

>At the time of Mr. Sledge's commitment offense his risk factors for violence were relatively high given the factors of his unemployment and limited vocational skills, his age, his transient antisocial lifestyle, his drug dependence, and his criminal history. At the current time, his risk factors appear to have diminished substantially. He has made some vocational and educational upgrades. He is much more mature socially and emotionally than he was at the time of the commitment offense. He appears to have developed some insight and understanding of the factors that led up to his life crime. He has maintained and sustained a high level of impulse control over the course of the past six or seven years. He has been involved in A.A. and N.A. to the extent that his substance abuse is in remission and no longer a problem at this time. As a result of these factors, I would assess Mr. Sledge's risk of dangerousness as average for this inmate's population.

(Transcript at 42-43.)

For his parole plans, petitioner had been accepted into the Salvation Army Rehabilitation Center in Sacramento, but his admission was still contingent upon an assessment by the admissions office and bed availability. Petitioner hoped to find work as a cook, and indicated he would eventually seek to have his parole transferred to Tennessee where his friends and family currently live.

/////

8

On state habeas corpus review of the Board's decision, the California Court of Appeal, Fourth District, held:

> The Board based its decision on the callous commitment offenses against multiple victims, i.e., the stabbing of a 68-year-old who died, and robbing another man at knifepoint, Sledge's concession that he committed both crimes to obtain money for his alcohol and drug habit, his pre-commitment record of 52 arrests and convictions, and his institutional behavior - 9 serious disciplinary violations (the most recent one in 1999) and 11 minor violations (the most recent in 1997).
>
> However, the Board also commended Sledge for obtaining a vocational certificate in dry cleaning, a G.E.D., and a paralegal certificate; his faithful participation in AA and the veteran's group; completing a stress management program in August 2006; and, among other things, complying with the guidance the Board provided at the 2006 parole suitability hearing.  While acknowledging Sledge's substantial progress, however, the Board also accepted his statements that the bloodshed Sledge experienced in Vietnam led to his additions and sent him on a downward spiral, and found Dr. Rouse's 2006 psychological evaluation of little help because it did not evaluate Sledge for post traumatic stress syndrome.  Under these circumstances, the Board requested a new evaluation be performed using "the new format with particular attention to any issues of PTSD and if there is any follow[-]up [Sledge] should become involved in before [he is] granted a date." The Board also directed Sledge to strengthen his parole plans, use his veteran's group to locate a specific placement upon release (as opposed to merely obtaining a spot on a waiting list), participate in formalized self-help classes with professional leadership (rather than peer-to-peer counseling alone) and provide updated letters of support.  As one Board member put it, "you need to have a little bit more so the panel can be assured that you've addressed any impulses that you may have once released to the community."
>
> The Board made an individualized inquiry into Sledge's suitability for parole and its decision is supported by some evidence.
>
> The petition is denied.

(*In re Curtis Lee Sledge*, No. D054016 (CA Ct. of Appeal, 4th App. Dist., March 10, 2009), slip op. at 2.)

The state appellate court properly considered the overarching consideration for parole suitability: petitioner's current or future dangerousness.  In this case, the state court's conclusion that some evidence supports the Board's denial of parole is not contrary to, or an

9

unreasonable application of Supreme Court precedent, nor based on an unreasonable determination of the facts in light of the evidence.  The circumstances of petitioner's commitment offense, combined with his extensive criminal history, misconduct in prison, and less than solid parole plans, including the lack of a firm residence plan if paroled, provide the required modicum of evidence to support the Board's 2008 denial of parole.

## V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 28, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE